## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**KRISTI PHILLIPS,**
    Plaintiff,

v().                                          **Case No. 4:23-cv-1044-CLM**

**COMMUNITY ACTION
AGENCY OF NORTHEAST
ALABAMA INCORPORATED,**
    Defendant.

### MEMORANDUM OPINION

Kristi Phillips sues her former employer, Community Action Agency of Northeast Alabama, Incorporated ("CAA"), alleging that CAA discriminated against her because of her sex, then fired her in retaliation for complaining about the discrimination. Phillips pleads seven counts in her complaint. (Doc. 1). CAA has moved to dismiss Counts 2, 3, 5, 6, and 7. (Doc. 4). For the reasons stated below, the court **DENIES** CAA's motion to dismiss Count 2 and **GRANTS** CAA's motion to dismiss Counts 3, 5, 6 and 7. Each dismissal is without prejudice.

### BACKGROUND

Kristi Phillips is a 40-year-old woman who began working for CAA as a case manager in 2021. Through her first year, Phillips never received negative feedback about her work or attendance and was never disciplined for such. That changed after she applied for a promotion in 2022.

1. <u>The Promotions</u>: In July 2022, CAA promoted Luke Laney (male) to Chief Operations Officer ("COO"). At that time, CAA told its employees about three other open administrative positions: (1) family services director, (2) housing services director for Jefferson County, and (3) housing services director for all other counties. CAA staff could apply for these positions by emailing their resumes to Laney.

Phillips and another female employee (Ali Chambers) applied and interviewed for the family services director position. Both women were qualified. But neither woman got the job. Instead, Paul Gilbert (male) got the job, even though Gilbert did not work for CAA.

In fact, Laney gave two positions to men who did not work for CAA: Gilbert became the family services director and Joseph Cunningham was selected to be the HUD housing counselor, which was not one of the three listed openings.[1] Phillips says that Laney gave these non-CAA employees the jobs because they were Laney's business partners outside of CAA. And because these men were hired for director positions, CAA promptly paid them more than Phillips.

Phillips points to two problems with Gilbert's hiring. First, Phillips says that she was more qualified than Gilbert. Phillips has an Associate of Applied Science degree for occupational therapy assistant ("OTA"), a license to practice OTA, and certifications for working with mental health and autism. Phillips also has six years of experience working with children at a preschool, serving as a pediatric therapist, and volunteering as a special needs room attendant. She had also been studying three months to take the HUD Housing Counselor Certification exam. In contrast, Phillips says Gilbert has a Bachelor of Social Work degree and three years of experience as a Social Services caseworker.

Second, Phillips says that Laney violated CAA policies by hiring Gilbert (and Cunningham). CAA policy says that promotions should be made within the organization if possible. Additionally, CAA policy requires all recruitment efforts to be conducted "through the customary channels, i.e. newspapers, notices in public places, and the State Employment Services." Phillips says Laney violated both policies because (a) Phillips worked at CAA for almost a year, while Gilbert and Cunningham did not work at CAA; and, (b) Laney didn't use the appropriate channels for recruiting employees to the open positions.

---

[1] CAA did not fill the "housing services director for all other counties."

2. <u>Phillips' Complaints to CAA</u>: Phillips complained about being passed over to CAA manager Haven Blalock. The next day, Phillips emailed Blalock and Carrie Lea, Executive Director of CAA, (both females) to complain again about Gilbert and Cunningham being selected for the positions, even though they didn't work for CAA. She also had separate phone conversations with both Blalock and Lea to complain that Laney had bypassed CAA policies to give the positions to Gilbert and Cunningham. Less than a week later, Lea emailed Phillips to clarify whether her concerns had been addressed in the previous phone conversations.

3. <u>Policy Changes</u>: That same week, CAA's CFO, Payton Lewis (female), emailed all staff with a revised copy of CAA's Personnel Policies and Procedures, with changes that its board had approved almost two months earlier. Among the changes were added responsibilities for case managers like Phillips. Lewis asked all staff to sign and return the statement of receipt for the new handbook policies.

Phillips first voiced her concerns about the sudden changes only to Blalock and Lea. She later voiced her concerns to all staff on an email chain and encouraged other employees to carefully review the changes. Phillips says she was not the only employee to voice concerns.

Lewis called Phillips, asking if she wanted a formal grievance meeting. Phillips said she did. Before that meeting, however, Phillips met with CAA board member, Chris Green (male), to discuss her complaints. Green told Phillips that CAA could not fire her after her complaints of discrimination because it would be retaliation. Having met with Green, Phillips then emailed Lewis, Lea, and Blalock that she could attend her grievance meeting after hours.

4. <u>Phillips' Termination</u>: The meeting never happened. Instead, Lewis and Lea fired Phillips. When Phillips asked why she was being fired, Lea said "[b]ecause you have disagreed with my leadership decisions." When Phillips responded that she did not have a problem with Lea, just Laney and Lewis, Lea responded, "[w]e just need you to get your

stuff and leave."

Phillips says CAA has a termination policy that requires the Executive Director to give two written reprimands, prepare a case history, and get a unanimous recommendation for dismissal before termination. CAA did not follow this policy before firing Phillips.

5. <u>Lawsuit</u>: Phillips filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter. (Docs. 1-1, 1-2). Phillips then sued CAA here. (Doc. 1). CAA moves to dismiss Counts 2, 3, 5, 6, and 7. (Doc. 4).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

## DISCUSSION

CAA does not seek dismissal of Counts 1 and 4, so the court does not address those claims here. The court considers CAA's arguments to dismiss the other counts in the order Phillips pleaded them.

- **Count 2: Title VII, Sex Discrimination (termination)**

In Count 2, Phillips alleges that her sex (female) motivated CAA's decision to fire her.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . **sex**[.]" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting 42 U.S.C. § 2000e–2(a)(1) (emphasis added)). "To prevail on a disparate treatment claim, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against her on the basis of a protected characteristic." *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Evidence must be presented which is "sufficient to create an inference of discrimination." *Id.* A plaintiff can establish that inference by showing: (1) he was a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

CAA says that Phillips has not presented any of the recognized methods of proof for proving a Title VII claim of sex discrimination: direct evidence of discrimination, the *McDonnell Douglas* framework, or a "convincing mosaic" of circumstantial evidence. But Phillips needn't satisfy such tests at the pleading stage. All she must plead is enough facts that, if taken as true, suggest intentional discrimination. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

Phillips has done so. If you accept Phillips' facts as true, she could prove that (1) she is a female; (2) she was qualified for a position she sought; (3) she was passed over for the position for a less-qualified man; and, (4) CAA fired her when she pointed out the sex-discrimination. Whether Phillips can ultimately link the sex-based hiring decision with the termination decision is a question for another day. For now, the court finds that Phillips has pleaded enough facts to support an inference that her sex played a role in CAA's decision to fire her. So the court denies CAA's motion to dismiss Count 2.

- **Count 3: Title VII, Hostile Work Environment**

In Count 3, Phillips alleges that CAA forced her to work in a hostile work environment because she was female. Phillips says that the hostile work environment stems from a combination of (a) Laney's decision to hire two male friends who were not CAA employees, (b) management's refusal to investigate and remedy Phillips' complaints about Laney's decision, (c) management's refusal to hold a scheduled grievance hearing, and (d) Lewis's response to Phillips' office-wide email about policy changes.

CAA asks the court to dismiss Count 3 for two reasons: (1) Phillips failed to exhaust a hostile work environment before the EEOC, and (2) Phillips fails to plead facts that would establish a claim of hostile work environment. The court agrees on exhaustion, so it needn't discuss the sufficiency of Phillips' pleading.

1. <u>Distinct claims</u>: The court's exhaustion ruling stems from the fact that "hostile work environment" and "disparate treatment" are distinct claims with distinct elements. Disparate treatment claims look at whether the claimant's sex caused her employee to take a discrete action like failure to promote or termination. Hostile work environment claims, however, require the claimant to show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). One form of discrimination can

exist—and often does exist—without the other.

2. <u>The EEOC charge</u>: Title VII requires plaintiffs to exhaust all available administrative remedies via an EEOC charge before suing. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Phillips filed an EEOC charge but did not use the phrase "hostile work environment" in it. Instead, after recounting the same facts she relies on in the current complaint, Phillips concludes: "I believe I was discriminated against based on sex, Female, and retaliated against in violation of Title VII of the Civil Rights Act 1964, as amended." (Doc. 1-1, p. 3).

Phillips says the failure to claim a hostile work environment in her EEOC charge isn't fatal because the facts that would have shown the EEOC disparate treatment would also show a hostile work environment. And she creates this chart to support her assertion:

| EEOC Charge | Complaint (Count Three) |
|---|---|
| • Paul Gilbert (Male) had been selected for the [Family Service Director] position.<br>• Another position had been filled by a male which had never been posted for others to apply.<br>• Phillips spoke with Lea and Blalock about her concerns with promotions.<br>• Phillips told Lea she wanted to file a grievance.<br>• Phillips noticed the policy and procedures had been updated.<br>• Phillips met with board member Chris Green and asked if she could be terminated for voicing her concerns.<br>• Lewis and Lea terminated Phillips. | • Laney ignored CAA's policies and hand-picked Gilbert and Cunningham, less experienced males outside of CAA, over Ms. Phillips.<br>• Laney and CAA awarded a director position, which was never posted for others within CAA to apply, to another male.<br>• Phillips complained to Blalock and Lea that less qualified males outside of CAA had been selected for the open director positions, in violation of CAA's Personnel Policies and Procedures.<br>• Lewis, Lea, and Blalock refused to investigate or remedy Ms. Phillips' complaints of sex discrimination or remedy Laney's discriminatory conduct.<br>• Lewis, Lea, and Blalock denied Ms. Phillips' request for a grievance hearing regarding her complaints.<br>• Phillips brought up her concerns about the many changes to the handbook, including job descriptions.<br>• CAA provided no notice or training to its staff on the new Personnel Policies and Procedures.<br>• Lewis and Lea fired Ms. Phillips after she asked to escalate her complaints of discrimination.<br>• Lewis and Lea terminated Ms. Phillips without following CAA's termination policy. |

(Doc. 8, p. 21).

The court agrees that the facts are the same, and thus the court assumes the EEOC looked into these alleged acts. But Phillips' lawsuit is limited by the scope of the EEOC investigation that "can reasonably be expected to have grown out of the EEOC charge." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). And none of the facts Phillips provided the EEOC would have led the EEOC to investigate CAA for a sex-based, severe and pervasive hostile work environment. Rather, the EEOC would have investigated whether sex led to Laney's decision to hire two men and CAA's decision to fire Phillips for complaining about Laney's hiring decision and CAA's abrupt policy changes.

Albeit in unpublished opinions, the Eleventh Circuit has drawn this distinction several times. *See, e.g.*, *Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 588 (11th Cir. 2007) (filing an EEOC charge for hostile work environment did not exhaust a disparate treatment claim); *Ramon v. AT&T Broadband*, 195 F. App'x 860, 862-64, 866 (11th Cir. 2006) (filing an EEOC charge for disparate treatment did not exhaust a hostile work environment claim); *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 839-41 (11th Cir. 2005) (filing an EEOC charge for disparate treatment did not exhaust a hostile work environment claim). Each time, the deciding factor was the type of investigation the EEOC could have been expected to conduct based on the pleading in the EEOC charge. *See, e.g.*, *Ramon*, 195 F. App'x at 866 ("Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment. . . . Because neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust those claims.").

Here, Phillips neither complained about a hostile work environment nor alleged facts that would make the EEOC suspect that "the [CAA]

workplace is permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the [Phillips'] employment and create an abusive working environment." *Harris*, 510 U.S. at 21. Rather, Phillips listed a series of discrete acts of discrimination that spanned just over a month—*i.e.*, from August 9, 2022, when CAA informed Phillips she wasn't selected as director, to September 12, 2022, when CAA fired Phillips.

Based on Phillips' charge, the court cannot reasonably expect that the EEOC investigated CAA for a hostile work environment, in addition to disparate treatment. As a result, Phillips cannot proceed on a Title VII hostile work environment claim, and the court will dismiss Count 3.

- **Count 5: Equal Pay Act (federal and state)**

In Count 5, Phillips alleges that because CAA paid the new male directors more than Phillips, CAA violated the federal Equal Pay Act, 29 U.S.C. § 206(d)(1), and Alabama's similar Clarke-Figures Equal Pay Act ("CFEPA").

Both statutes cover the same general ground—*i.e.*, preventing employers from paying employees of one sex more than employees of the other sex for using similar skills to perform similar jobs with similar responsibilities. Here is the federal version:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment ==for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions==, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by

> quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (highlight added). And here is the state version:

> An employer, including the state or any of its political subdivisions, including public bodies, may not pay any of its employees at wage rates less than the rates paid to employees of another sex or race for equal work within the same establishment on jobs ==the performance of which requires equal skill, effort, education, experience, and responsibility, and performance under similar working conditions==, except where the payment is made pursuant to any of the following:
>
> (1) A seniority system.
>
> (2) A merit system.
>
> (3) A system that measures earnings by quantity or quality of production.
>
> (4) A differential based on any factor other than sex or race.

Ala. Code § 25-1-30(b) (highlight added).

As shown by the highlighted parts, both statutes require the plaintiff to show that she was paid less than a male co-worker, despite performing a job that required "equal . . . responsibility." CAA argues that the court must dismiss Count 5 because Phillips fails to plead facts that would establish that her responsibilities as a case manager equaled the responsibilities of Gilbert, the family services director, or Cunningham, the HUD housing counselor.

The court agrees. In her complaint, Phillips fails to plead the responsibilities for the three distinct positions. Instead, she makes this conclusory statement:

> 130. CAA promoted and paid Laney, Gilbert, and Cunningham (males) at a higher rate of pay than Ms. Phillips and other females for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions.

(Doc. 1, ¶ 130).

In short, Phillips merely recites the statute, without pleading facts that would prove a violation of the statute. Compliance with Rule 12 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Because Phillips fails to plead facts that would prove a violation of the federal or state Equal Pay Act—*i.e.*, facts that would show that she and her male co-workers had equal responsibilities but unequal pay—the court must dismiss Count 5 for failure to plead a claim that entitles Phillips to relief. Because Phillips may be able to plead such facts, the dismissal will be without prejudice.

- **Count 6: Invasion of Privacy, False Light (state law)**

In Count 6, Phillips alleges that CAA violated state law by putting her in a false light when it fired her. CAA argues that the court must dismiss this claim because Phillips fails to plead facts that would show that CAA made any *public* statements about the reason it fired Phillips. The court agrees.

False light is a variation of the state-law tort of invasion of privacy. To establish a claim for false light, a plaintiff must show that the defendant (1) "gave publicity to a matter" concerning the plaintiff, (2) placed the plaintiff in a "false light" that would be highly offensive to a reasonable person, and (3) did so with knowledge that the publicized

matter was false or with reckless disregard for its truth or falsity. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004). "A false-light claim does not require that the information made public be private," but it does require that "the information ... be false." *Id.* (quoting *Butler v. Town of Argo*, 871 So. 2d, 1, 12 (Ala. 2003)).

CAA's argument focuses on the "publicity" requirement. Under Alabama tort law, "[t]o achieve publicity, the statement must 'reach the public.' *McCreight v. AuburnBank*, 611 F. Supp. 3d 1336, 1343 (M.D. Ala. 2020) (quoting *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000)). "It is not enough to expose information to a single person or a small group of persons. It must be 'sufficient to give publicity within the meaning of the term.'" *Id.*

In relevant part, Phillips pleaded her false light claim like this:

> 143. CAA negatively and falsely portrayed Ms. Phillips as a disgruntled employee riddled with performance issues to the degree her employment was due to be terminated without following proper procedure or the policies of CAA.
>
> 144. CAA placed Ms. Phillips in a false light with her peers, coworkers, clients, and the public by terminating her employment for no reason and then indicated the reason was one to implicate Ms. Phillips' actions as ethical and/or criminal violations.
>
> 145. CAA negatively and falsely portrayed Ms. Phillips as insubordinate and a "troublemaker" to her coworkers and peers for complaining of discrimination, policy violations, and retaliation.
>
> 146. CAA's false portrayal of Ms. Phillips employment damaged her relationships and reputation in the community, and her ability to seek comparable employment and employment in her career choice.

(Doc. 1, ¶¶ 143-46). In essence, Phillips alleges that the fact she was fired for complaining about discrimination put her in a false light; she does not allege that (a) CAA made a particular false statement about her, then (b) publicized that false statement in a way that made it "substantially certain to become one of public knowledge." *Regions Bank*, 897 So. 2d at 245.

Because Phillips fails to allege facts that would show that CAA publicized a false statement about her, the court must dismiss Count 6. The dismissal will be without prejudice because Phillips might be able to allege such facts. If she amends her complaint to re-allege a false light claim, Phillips should allege exactly what statements were made, by whom, and to whom. *See Jones v. Bank of Am., N.A.*, No. 2:18-CV-0512-JEO, 2019 WL 2744470, at *10 (N.D. Ala. July 1, 2019) ("There are no allegations as to what statements were made, how often they were made, to whom they were made, or any other details from which it could be inferred that such statements were either 'highly offensive' or have become public knowledge due to the actions of Defendants."); *see also Flickinger v. King*, No. SC-2022-0721, 2023 WL 3029709, at *11 (Ala. Apr. 21, 2023) (finding that publication of statements to a private Facebook group was insufficient to allege that the statements were made "public knowledge" for an invasion of privacy claim based on false light).

- **Count 7: Negligent and Wanton Hiring, Training, Supervision, and Retention (state law)**

In Count 7, Phillips alleges that CAA violated state law by negligently or wantonly training, supervising, and disciplining four CAA employees (Laney, Lea, Lewis, and Blalock), which caused Phillips to suffer discrimination and workplace hostility.

Under Alabama law, to succeed on a claim of negligent and wanton supervision, a plaintiff must prove three things: (1) an employee committed a common law tort recognized under Alabama law; (2) the employer had either actual or constructive notice of its employee's tortious conduct; and (3) the employer failed to adequately respond to the notice.

*See Stevenson v. Precision Standard Inc.*, 762 So. 2d 820, 824 (Ala. 1999); *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *Gilmer v. Crestview Mem'l Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009).

As discussed, the court must dismiss Phillips' lone state-law tort claim (invasion of privacy), as well as her state statutory claim (Clarke-Figures Equal Pay Act). Because Phillips fails to viably plead that a CAA employee committed a state-law tort, she necessarily fails to plead facts that entitle her to relief on a state-law negligent or wanton supervision claim. *See id.*; *see also Herren v. La Petite Acad., Inc.*, No. 2:16-CV-01308-LSC, 2019 WL 2161250, at *15 (N.D. Ala. May 17, 2019) ("violations of federal employment discrimination laws cannot supply the underlying tort for a negligent supervision claim"); *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314 (N.D. Ala. 2002)("A [p]laintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination but does not support a common-law tort.").

## CONCLUSION

For these reasons, the court **DENIES** CAA's motion to dismiss Count 2 and **GRANTS** CAA's motion to dismiss Counts 3, 5, 6, and 7. Each dismissal is without prejudice. The court will enter a separate order that sets the deadline for Phillips to file an amended complaint (if any) and for the parties to complete discovery.

**DONE** and **ORDERED** on September 19, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE